## Shaffer *v.* Richardson's Administrator.

DESCENTS.—ABANDONMENT AND ADULTERY OF WIFE.—In order to bar the widow's interest in her deceased husband's estate, under section 32 of the statute of descents, (1 G. & H. 298,) two things must concur: First, she must have left her husband, and, second, have been living in adultery at the time of his death.

WITNESS.—WIFE.—DECEDENT'S ESTATE.—In a suit by the widow against the administrator of her deceased husband, to compel him to make distribution to her of her share of the personal estate, the widow is a competent witness as to all facts within her own knowledge.

Shaffer *v.* Richardson's Administrator.

DESCENTS.—WIFE'S SHARE OF PERSONALTY.—The widow is entitled, under the statute, absolutely, to $300 of the personal estate of her deceased husband, but the husband may, by will, deprive her of any share in the residue of the personal estate.

APPEAL from the *De Kalb* Common Pleas.

ELLIOTT, J.—The appellant, *Margaret R. Shaffer*, claiming to be the widow of *Theron Richardson*, who died at said county of *De Kalb*, testate, filed a petition in the Court of Common Pleas, against *Rutan*, the administrator of said estate, with the will annexed, alleging that all the debts against said estate had been fully paid, and that there remained in the hands of the administrator the sum of $3,500 for distribution, and praying an order against said administrator that he pay to her, as such widow, first, the sum of $300, to which she is entitled by law, and, second, one-third of the residue of said estate in his hands for distribution.

Answer in two paragraphs. 1. The general denial. 2. Admitting the marriage, but alleging that in 1857, the said *Margaret* left her said husband, and at the time of his death was living in adultery with one *Adam Shaffer*. Reply in denial of the second paragraph.

The court, to which the issues were submitted for trial, at the request of the plaintiff, made a special finding of the facts, and of the conclusions of law upon them. The finding is as follows: "That said plaintiff was married to said *Theron Richardson* in the year 1839, in *Richland* county, *Ohio*, where they resided four years, when they removed to *Portage* county, *Ohio*, where they resided one year, when they removed to *Steuben* county, *Indiana*, where they resided two years, and then removed to *Constantine, Michigan*, and there remained until the first day of *April*, 1851; that after their said marriage, up to said last mentioned day, they continued to live together as husband and wife; that during the winter preceding said first of *April*, 1851, they did not live happily together, and part of the time, during said winter, the said *Theron* did not spend his time at home at night, but stayed at a hotel in the village; that on the first

day of *April*, 1851, said *Theron* left his said wife, taking with him a boy, a son of his and of said plaintiff, then nine years old, and went to the State of *Indiana*, *Lagrange* county, leaving his said wife and three daughters, also the issue of the said marriage, without informing his said wife or daughters where he was going; that said *Theron* remained away until some time in *July* of the same year, when he returned and took away some of his property which he had left; that said *Theron* was not again heard from by his said wife, until in *October*, 1862; that after he had left in *July*, 1851, having heard that he was dead, and believing such to be the case, plaintiff removed, with her three daughters, to the State of *New York*, and there remained until some time in the year 1852, when she, with said daughters, removed to *Williams* county, *Ohio*, where she has since continued to live; that sometime in the year 1855, she was married to one *Shaffer*, with whom she has since continued to live, and to co-habit with him as his wife; that at the time of the marriage of said plaintiff with said *Shaffer*, she supposed that said *Theron* was dead, and remained in that belief until some time in the month of *October*, 1862, when she was informed and knew that said *Theron* was still alive, and residing in *De Kalb* county, *Indiana*; that said plaintiff, after said month of *October*, 1862, with full knowledge of all the facts, continued to live with said *Shaffer* as his wife until the present time, and to co-habit with him as such; that said *Theron* married a woman with whom he lived until the time of his death, which occurred in the month of *April*, 1864, at *DeKalb* county, *Indiana*; that neither said *Theron*, nor said plaintiff, ever obtained a divorce from the other; that said *Theron* left property of the value of between $3,000 and $4,000, and that said *Joel A. Rutan*, as the administrator of said *Theron*, has in his hands for distribution the sum of about $3,000, and that said plaintiff has demanded of said administrator the sum of money and share to which she would be entitled as the widow of said deceased. From which facts

the court finds the following conclusions of law, to-wit: That said plaintiff was, at the time of the death of *Richardson*, living in adultery with said *Shaffer*, having before that time left her said husband, *Theron Richardson*, and that she is not entitled to take any part of his estate, and therefore the court now finds for the defendant. The plaintiff excepted to the conclusions of law stated by the court from the facts found in the case, and also moved the court for a judgment for the plaintiff upon the facts so found, which motion and exceptions were overruled, and the plaintiff excepted and appeals to this court.

It is insisted by the appellant that the court erred:

1. In holding as a conclusion of law from the facts as found by the court, that the appellant is not entitled to any portion of the estate of said *Theron Richardson,* deceased.

2. In drawing the conclusion that the facts as found constituted a leaving by the plaintiff of the said *Theron Richardson*, within the meaning of the statute.

3. In rendering judgment against the appellant.

The first and second assignments of error relate to the conclusions of law drawn by the court from the facts as found, and the third to the rendering of judgment against the appellant. It will be borne in mind that the court found, as a part of the facts of the case, that the wife did not, in fact, leave or abandon the husband, but that, on the contrary, he voluntarily left and abandoned her, and went to a distant part of the country, to her unknown; that she remained with her daughters at the place where they were residing at the time of his abandonment, until after she was informed and believed that he was dead; that subsequently, after a lapse of four years, and under the confident belief in *Richardson's* death, she married *Shaffer*, but that in October, 1862, she learned that *Richardson* was alive, and resided in *De Kalb* county, in this State, after which she continued to live with *Shaffer*. From these facts, the court found, as a conclusion of law, not as a fact, that she left her husband.

The several assignments of error are so intimately connected as to form, in effect, but a single question, the decision of which must depend upon the construction that must be given to section 32 of the act regulating descents, and the apportionment of estates. 1 G. & H., 298. That section reads as follows: "If a wife shall have left her husband, and shall be living at the time of his death in adultery, she shall take no part of the estate of her husband." It is urged by the appellant, that to bar the rights of the wife in her husband's property, under this provision of the statute, the concurrence of two material facts are required: First, the wife must have left, or, in other words, have abandoned her husband, and, second, she must have been living in adultery at the time of his death; that each of these facts are alike essential, and the existence of either one, without the other, cannot bar her rights. We are not favored with any argument on this question by the counsel for the appellee.

The adultery of the wife did not bar her dower at common law, but it was enacted by the 34th chapter of the *English* statute of 13 Edw. 1, commonly called the statute of Westminster 2, that "if a wife willingly leave her husband and go away, and continue with her *advouterer*, (adulterer,) she shall be barred for ever of action to demand her dower, that she ought to have of her husband's lands, if she be convict thereupon, except that her husband. willingly, and without coercion of the church, reconcile her, and suffer her to dwell with him, in which case she shall be restored to her action."

It seems to have been a controverted question, under that statute, whether the adultery of the wife would bar her dower, unless she left her husband by eloping with her adulterer. Chancellor KENT seems to have regarded such elopement as necessary to the bar. 4 Kent's Com., pp. 52, 53, and notes. But in *Hetherington* v. *Graham*, decided in 1829, 6 Bing. 135, the question was, whether, under the statute, the committing an act of adultery, and continuing with the adulterer, was a bar to the wife's right of dower, where she

had previously left her husband, with his consent, and was living apart from him, with such consent, at the time of the adultery, or whether it was necessary, in order to satisfy the words of the statute, that the original leaving of the husband should have been a leaving with the adulterer, by his means or persuasion. It was held that if the wife leaves her husband voluntarily, and afterwards lives in adultery, her dower is barred, though she does not elope with the adulterer. In concluding the opinion, after reviewing several previously decided cases, under the same statute, Chief Justice TINDAL said: "We hold the proper construction of the statute to be what the words still will warrant, that if a woman leaves her husband with her own free will, and afterwards lives in adultery, the dower is forfeited."

In a recent case in *Upper Canada,* where the husband had first deserted his wife and then she had lived in adultery, she was held not to be barred. *Graham* v. *Law,* 6 U. C. C. P. 310, referred to in 1 Bishop on Marriage and Divorce, § 628.

In *Cogswell* v. *Tibbetts,* 3 N. H. 41, in which State the statute of 13 Edw. 1, above cited, was held to be in force, the question was, whether a woman, living in adultery at the time of her husband's death, without having left or eloped with her adulterer, had forfeited her dower, and it was held that she had not. It seems evident to us that a proper construction of the *English* statute requires that there should be a voluntary abandonment of the husband by the wife, as well as her subsequent adultery, to bar dower. Such is clearly the construction given to it by the *American* courts, and, we think, the leading *English* cases are to the same effect. But however that may be, we must presume that our statute, in so far as it can be deemed to have been based on the *English* statute, was enacted in view of the construction given to that statute by the *American* courts. The language of the thirty-second section is plain, unequivocal and explicit: "If a wife shall have left her husband, and shall be living, at the time of his death, in adultery," &c. So long as language can be made to express ideas,

no room would seem to be left here for construction; and we cannot ignore or disregard the requirement that the wife must have left the husband, and hold that the fact alone of her living in adultery at the time of his death bars her claim in her husband's property, without a total disregard of the plain letter as well as the spirit of the act. Questions may arise, under the statute, as to what particular acts will amount to an abandonment by the wife, but no such question is presented here. No act of hers, even indicating a willingness to a separation, is shown; but, on the contrary, the husband voluntarily abandoned her, left the neighborhood of their residence, and so concealed from her his place of abode as to render it improbable that she could follow him.

The marriage of the appellant with *Shaffer* was void, because *Richardson*, her husband, was still living, and they had not been divorced; she was, therefore, in a strictly legal sense, guilty of adultery. But, under the facts found by the court, not of intentional or criminal adultery, at least up to the time that she was informed that *Richardson* was still living, for, believing that he was dead at the time of her marriage with *Shaffer*, there was no moral turpitude until she learned the fact that *Richardson* was living. She continued, however, to live with *Shaffer*, after she acquired a knowledge of that fact, up to the time of *Richardson's* death, a period of about eighteen months. Applying the rule that she must be presumed to know the law, it would follow that she must have known, during that period, that she was living in adultery with *Shaffer*. But the decision of this point is not necessary to a final disposition of the case, and we do not, therefore, decide it.

We think the court erred in the conclusion of law, from the facts found, that the appellant left her husband, and also in rendering judgment for the defendant.

On the trial of the cause, the appellant was sworn and permitted to testify as a witness, in her own behalf, over the objection of the defendant. She testified to the mate-

rial facts found by the court, except those in relation to the condition of the estate, the administration thereof, and the amount of assets in the hands of the administrator for distribution. To the admission of this evidence the defendant excepted, and assigns the same for cross-error.

The first objection urged to the evidence is, that it comes within the first proviso of section 3 of the act in relation to witnesses, &c. Acts 1865, p. 59. We do not so regard it. This is not a suit in which a judgment is sought against the estate represented by the administrator, within the meaning of that proviso. The object is not to recover a judgment against the administrator upon a debt or demand against the estate, or, in any wise, to diminish the amount of assets in his hands for distribution. The appellant claims to be a distributee of the estate, and the evidence given by her went simply to the question of her right as the decedent's widow to claim as such. Nor does it come within the second proviso of that section. This is not an action against heirs, nor is it founded on a contract with, or demand against, the ancestor, within the meaning of that proviso. No evidence was given by the appellant of any communication made to her by her husband, in contravention of the prohibition of said section. Her evidence was only as to matters within her own knowledge, of which she was authorized to testify.

It is claimed that the appellant is entitled, first, to three hundred dollars of the personal estate of the deceased; and, second, to one-third of the residue after the payment of the debts of the deceased and the expenses of administration. That she is entitled to three hundred dollars, under section 21 of the act regulating descents and the apportionment of estates, (1 G. & H. 295,) there can be no question; but her right to a distributive share of the residue, presents a different question.

Section 24 of the act just cited provides that "if a man die intestate, leaving a widow and child, or children, not

exceeding two, the personal property of such intestate shall be. equally divided among ·the widow and children, the widow taking an equal share with one. child; but if the number of children exceeds two, the widow's share shall not be reduced below one-third of the whole."

It is also provided, by section 137 of the act in relation to the settlement of decedents estates, that "when the deceased shall have died intestate, the surplus remaining after the payment of all debts, and, in case of a will, after the payment of all debts and legacies, shall be distributed to the legal heirs thereof, according to the law of descents in force in this State, unless such decedent was an inhabitant of another State, in which case such surplus shall be distributed according to the laws of that State."

These are the only provisions of the statutes of descent, and for the distribution of· the personal estate of decedents, bearing on the question under consideration. The right of the widow to one-third of the real estate of which the husband dies seized is secured to her by law. It is not subject to the payment of the husband's debts, nor can he deprive her of it by will. But no such right is secured to her in his personal estate, except as to the sum of three hundred dollars. He may deprive her of any share in the residue by will, but if he die intestate, then, as we have seen, the widow is entitled to one-third of his personal estate, after the payment of all debts. In this case, the will of the decedent is not in the record, nor did the court make any finding in reference to it.

It is claimed by the appellant's counsel that her right as "*Richardson's* widow to three hundred dollars, out of the funds in the hands of the defendant, and to one-third of the residue, is admitted, unless barred by the facts found by the court." But we do not so understand the record. It is stated in the complaint that *Richardson* died testate, on the 23d day of *April,* 1864, at the county of *DeKalb,* possessed of a considerable estate, and disposed of the same to certain persons, whose names are stated. The estate

so disposed of is the same of which the appellant claims a distributive share. The facts that *Richardson* died testate, and that he disposed of his estate by will, being thus admitted in the complaint, it was not necessary to a final disposition of the case that the court should make any finding in reference to them; they were not in issue. We think, therefore, that under the allegations of the complaint, and the facts as found by the court, the appellant is only entitled to three hundred dollars.

The judgment is reversed, with costs, and the cause remanded to the Court of Common Pleas, with instructions to enter an order that the defendant, as administrator of *Richardson*, pay the appellant three hundred dollars.

*J. L. Worden* and *J. Morris*, for appellant.

*A. Ellison*, for appellee.