## GOODWIN v. OWEN ET AL.

DESCENTS.—*Adultery of Wife.—Widow.*—Where a wife has abandoned her husband, and, at the time of his death, is living in adultery, the 32d section of the statute of descents, of this State, prevents her from inheriting any part of his estate.

SAME.—*Statute Construed.*—Habitual, illicit intercourse of the wife with men, no difference *with whom* in particular, or *where*, is a "living in adultery" within the meaning of such section.

SAME.—*Posthumous Child.—Mother.*—If a woman who was "living in adultery" at the decease of her husband gives birth to a legitimate posthumous child, begotten by him, it will inherit from such decedent, and, on its death, she will inherit from her child.

REAL ESTATE.—*Action to Quiet Title.—Mortgage.—Assignment.—Foreclosure. —Principal and Agent.*—A., to procure the loan of a sum of money, signed and acknowledged a mortgage on his real estate, securing a promissory note for such sum, also signed by him, and both payable to B., who had promised that, upon the execution and delivery of these instruments, he would make such loan to A.; these instruments were delivered to C., who was to present them to B., procure such loan, retain thereof a sum for services yet to be performed by him for A., and pay over to the latter the remainder; C. presented them to B., who declined to accept them or to make such loan to A., but, as C. was indebted to B., in a sum equal to the amount to have been retained by C., B. proposed to assign such note to C., grant the latter an extension on his debt, and loan him a sum of money equal to the excess of A.'s note over such debt, if C. would execute to B. a promissory note for the amount of such loan to C., which proposal was accepted by the latter, and executed by both, and C. placed such mortgage on record; subsequent to the signing, but prior to the assignment and recording of such mortgage, A., for a valuable consideration, conveyed such realty, by a quitclaim deed, to D., against whom C. brought suit to foreclose such mortgage.

*Held*, that no legal delivery of such note and mortgage had been made to B., that his assignment thereof to C. was ineffectual, and that D. was entitled to a decree quieting his title against such mortgage.

From the Hendricks Circuit Court.

*G. H. Goodwin*, for appellant.

*L. M. Campbell*, for appellees.

PERKINS J.—Suit to foreclose a mortgage, executed by Jennie A. Owen to James Nealis, on the east half of the south-west quarter of section nineteen; also, a fractional part of the east half of the north-west quarter of section

thirty, and bounded as follows: Beginning at the north half-mile stake of said section, thence west with the section line, twenty-two rods and ten links; thence, south, fifty-two degrees east, thirty-one rods, to the half section line; thence north with the half section line, to the place of beginning; all in township seventeen, north, range two, west, in Hendricks county, Indiana, estimated to contain eighty-two acres and sixty one-hundredths of an acre, to secure the payment of a note of one thousand dollars, etc. It is averred that the mortgage was duly recorded. The other defendants were made parties on account of their interest in the property mortgaged. The defendant Jennie made default.

Charles Owen, an infant, by his guardian ad litem, answered:

1st. The general denial;

2d. That said Charles is the sole owner of said land, by inheritance from William B. Owen, deceased, late his father; that his codefendant Jennie A. Owen, widow of said William B. Owen, deceased, had no right in or title to said lands, at the date of the mortgage; and,

3d. That prior to his decease, said Jennie had abandoned said William B. Owen, her husband, and, at the time of his death, was living in adultery with one James P. Miller and others, at a house of ill fame, in the city of Indianapolis.

He further averred that said mortgage was executed without consideration, and fraudulently.

Horatio Owen, another of the defendants, answered:

1st. The general denial;

2d. That at the date of the mortgage sued on, said Jennie A. Owen had no title to or interest in the lands described in it. That the land had been owned by William B. Owen, deceased, the husband of said Jennie, and father of said defendant Charles; that at his death he left no other heirs; that prior to said William's death his wife, Jennie, had abandoned him, and was, at the time of

his death, living in adultery with one James P. Miller and others, at a house of ill fame, in the city of Indianapolis, which was well known to plaintiff; that this defendant, Horatio Owen, had purchased the interest of said Jennie, and was the owner thereof; that said mortgage was fraudulent, and without consideration.

The affirmative paragraphs of the above answers were demurred to for want of sufficient facts, and the demurrers were overruled, and exceptions taken.

The cause was submitted to the court for trial, and the court, at the request of the parties, made a special finding, as follows:

"William B. Owen died in Hendricks county, Indiana, on the 12th day of June, 1874, seized in fee-simple of the lands described in the mortgage, which is an exhibit and made a part of the complaint, and leaving surviving him, his widow, the defendant Jennie A. Owen, and one child, the defendant Charles Owen. After the death of the said William B. Owen, to wit, on the 30th day of July, 1874, said widow, Jennie A. Owen, gave birth to a legitimate child by the said William B. Owen, which lived until the 12th day of August, 1874, on which day it died. On the 20th day of June, 1874, the defendant Jennie A. Owen, at Jamestown, in Boone county, employed the plaintiff as her attorney to attend to her interest, generally, in the settlement of her husband's estate, and executed to him a general power of attorney to act as her agent in the business. She contracted to pay the plaintiff five hundred dollars ($500.00), as a fee for his services, for the payment of which plaintiff demanded security. Being without means, said defendant Jennie A. Owen requested the plaintiff to help her raise money to pay his fee, and upon which she could subsist till she could get money from her husband's estate. It was agreed that he would effect a loan for her from James Nealis, of one thousand dollars ($1,000), of which amount he was to retain five hundred dollars ($500), his fee as

her attorney, she agreeing to secure the loan by a mortgage on her interest in her late husband's real estate. Plaintiff, about this time, saw Nealis, and told him he wanted the money, and how it was to be secured, who told the plaintiff he would furnish the money.

" Pursuant to this arrangement, the plaintiff went to Indianapolis, on the 7th day of August, 1874, and met the defendant Jennie A. Owen, at which date she executed the note for one thousand dollars, described in the complaint, payable to said Nealis, and the mortgage on said real estate, which is a part of the complaint.

" The plaintiff returned to Jamestown with the note and mortgage, and deposited them in his office, and went on a business tour to the State of Kentucky. Immediately on his return home, he took the note and mortgage and went to Lebanon, Indiana, and, on the 21st of August, 1874, presented them to Nealis and asked him for the money. Nealis told plaintiff he did not know the woman, or about the title to the land, and declined to advance the money to the defendant Jennie A. Owen, upon the mortgage, but said he would let the plaintiff have the money, taking plaintiff's individual note, and would assign the note and mortgage of defendant Jennie A. Owen to plaintiff, to which plaintiff assented.

" Nealis thereupon let the plaintiff have five hundred dollars, cash, taking his note therefor, and gave him an extension on another five-hundred-dollar note, which he already held against plaintiff. Five hundred dollars was all the money advanced to plaintiff by Nealis.

" Plaintiff has since repaid this money, five hundred dollars, to Nealis, and taken up the note he then gave for it. Of this five hundred dollars, he paid small sums to the defendant Jennie A. Owen, at various times, but the aggregate amount of said sums does not appear. Plaintiff had the mortgage recorded on the 1st day of September, 1874. On the 18th day of August, 1874, said Jennie A. Owen, in consideration of one hundred and fifty dollars,

paid her by the defendant Horatio Owen, executed and delivered to him, said Horatio, a quitclaim deed, conveying to him all her right, title and interest in and to the premises described in said mortgage.

"Before the death of said William B. Owen, to wit, on or about the 2d day of June, 1874, his wife, the said defendant Jennie A. Owen, abandoned her said husband, without cause to justify her so doing, and never returned to his home. During a time immediately preceding said abandonment, said Jennie A. Owen was guilty of various acts of adultery with one James P. Miller, and said abandonment was pursuant to an arrangement with said Miller, who preceded her to Indianapolis and made arrangements for a boarding place for her, met her at the depot and conducted her to said boarding-house. At the time of the death of said William B. Owen, said Jennie A. Owen was at the house to which said Miller conducted her, and, although not living with said Miller, was maintained by, and continued her adulterous intercourse with, him.

"And from the foregoing facts, the court finds the following conclusions of law:

"1st. That said defendant, Jennie A. Owen, took no interest in said real estate, upon the death of said William B. Owen, as his widow, but that said real estate descended to the two children of said marriage.

"2d. That upon the death of said posthumous child, said Jennie A. Owen inherited the fourth part of said real estate, as its heir at law.

"3d. That the mortgage executed by said Jennie A. Owen, to said Nealis, never became operative and effective to create a lien upon said real estate; 1st, because the same was not delivered to said Nealis till the 21st day of August, 1874, after the conveyance of said Jennie A. Owen to said Horatio Owen; and 2nd, because said Nealis never did accept said mortgage, or make any advancement upon its security, and took thereby no interest

in or lien upon said real estate, which he could assign to the plaintiff.          Livingston Howland, Judge.

"To which findings of fact, and conclusions of law thereon, the plaintiff excepts."

The court rendered judgment for the plaintiff, on the note, and a decree cancelling the mortgage as void, in accordance with the prayer of one of the paragraphs of answer by way of counter-claim.

The plaintiff below is the appellant in this court.

The rulings of the court upon the demurrers to paragraphs of answers, and the conclusions of law upon the facts found by the court, are assigned for errors, in this court.

We will first examine the question as to the interest of Jennie A. Owen in the real estate.

It appears that William B. Owen was the owner of the land in question, on the 12th day of June, 1874; that, on the 2d day of that month, his wife, said Jennie, abandoned him, without cause, and was, at the time of his death, living in adultery, in the city of Indianapolis, Indiana; that the mortgage sued on is dated on the 7th day of August, 1874, the day it was signed and acknowledged; and that, on the 18th day of August, 1874, said Jennie executed a deed for her interest in the real estate of her deceased husband, being the real estate described in the mortgage, to Horatio Owen, one of the defendants in this suit.

Section 32 of our statute of descents, 1 R. S. 1876, p. 413, enacts, that,

"If a wife shall have left her husband, and shall be living at the time of his death, in adultery, she shall take no part of the estate of her husband."

It is claimed that this statutory enactment does not embrace a case like the present.

We think it would be in disregard of the true intent and meaning of this section of the statute,—would, in fact, render it nugatory, to give it a construction that

would exclude from its operation such cases as the one now before us. See *Gaylor* v. *McHenry*, 15 Ind. 383; *Shaffer* v. *Richardson's Adm'r*, 27 Ind. 122.

The language of the section will be noted. It does not specify how or where the wife shall be living in adultery; it does not say that she shall be living in adultery with some particular person, at some particular place; but, only, that she shall be living in adultery. In this case, she was living in a room provided for her by her paramour, in which she was supported by him, and where he, and probably other men, had habitual illicit intercourse with her. Living in adultery means living in the practice of adultery. In this case, the evidence shows that she was living in the continuous practice of open adultery. If it does not show a living by her in open adultery, it will be difficult to find a case of such living.

This point being established, it follows that Jennie A. Owen took nothing of her husband's real estate. But it appears, by the special findings, that one of his and her children died on the 12th of August, 1874, from which child the law did not disable her to inherit. She took a fourth part of said real estate from the deceased child. On that part, her valid conveyances would operate; and if the mortgage was a valid instrument, it attached as a lien upon one-fourth of said mortgaged premises.

Was the mortgage a valid instrument, in the hands of appellant? Jennie A. Owen employed appellant as her attorney, and was to pay him five hundred dollars. Appellant wanted this money paid, and Jennie wanted five hundred dollars for her own subsistence, and it was agreed that a thousand dollars should be borrowed of Nealis, on her note, secured by the mortgage, signed by her, on the premises. Nealis refused to loan the money on the mortgage, never accepted it as a security, and never advanced any money upon it. It was not executed to the appellant to secure him his fee, and he never, so far as appears, advanced but a nominal sum to Jennie, the

mortgagor, for her support.   Under these circumstances, is the mortgage a valid instrument, in the appellant's hands, as against the owners of the real estate who contest it?   As we have seen, Jennie makes default.   In our opinion, the mortgage never came into being as an operative instrument.   It was signed, to be delivered to the mortgagee, on his loaning a sum of money.   The mortgagee refused to accept the mortgage and loan the money. He never acquired any property in the mortgage, and, of course, could transfer none to the plaintiff.   The mortgage was never *in esse.*

The conclusion of the circuit court was correct, and the judgment must be affirmed, with costs.

Affirmed, with costs.