SPADE *v.* HAWKINS, ADMINISTRATOR.

[No. 8,998. Filed January 5, 1916.]

1. HUSBAND AND WIFE.—*Interest in Estate of Deceased Husband.—Adulterous Wife.—Statutes.*—In order that §3034 Burns 1914, §2496 R. S. 1881, may be invoked to cut off the right of a surviving wife to the one-third interest in fee simple given her by §3014 Burns 1914, §2483 R. S. 1881, in the real estate of her deceased husband, it must appear that she had abandoned her husband and that at the time of his death she was living apart from him in adultery. p. 391.

2. HUSBAND AND WIFE.—*Interest in Estate of Deceased Husband.—Adulterous Wife.—Findings.—"From Time to Time".*—A special finding that defendant, a surviving widow, during a certain number of years had been "living from time to time in the practice of adultery with parties whose names are not disclosed by the evidence" could not support a conclusion of law that she was precluded from participating in her husband's estate by virtue of §3034 Burns 1914, §2496 R. S. 1881, since the finding did not com-

pel the inference that she was living in adultery at the time of her husband's death, but was at most a finding that occasionally she was guilty of adultery, the phrase "from time to time" being synonymous with "occasionally", "at intervals", "now and then". pp. 392, 393, 394, 396, 398.

3. APPEAL.—Review.—Special Findings.—Inferences.—As a general rule evidentiary matter in a special finding will be disregarded, and nothing can be added by presumption, inference or intendment, while silence upon a material point is equivalent to a finding against the party having the burden of proof, but where primary facts found lead to but one conclusion the ultimate fact need not be stated and will be considered as proven. p. 392.

4. HUSBAND AND WIFE.—Adultery of Wife.—Evidence.—A single act of adultery by a wife does not force the conclusion that she was living in adultery within the meaning of §3034 Burns 1914, §2496 R. S. 1881, but the fact that she committed such act under circumstances showing a deep degree of abandonment may be submitted to the jury for consideration in determining her course of life at the time of her husband's death. p. 394.

5. HUSBAND AND WIFE.—Adultery of Wife.—Statutes.—Section 3034 Burns 1914, §2496 R. S. 1881, precluding an adulterous wife from participating in the estate of her deceased husband, contemplates not only a relation wherein the wife after abandoning her husband is found at the time of his death domiciled with a man other than her husband in a state of adultery, but also a status wherein an inclination to adultery is a present element with the purpose and practice of following such inclination to its logical conclusion at convenience and whenever opportunity affords. p. 395.

6. HUSBAND AND WIFE.—Adultery of Wife.—Evidence.—Evidence that a wife, after abandoning her husband, gave birth to two illegitimate children, the last of whom was born two years before her husband's death, but which failed to show any improper conduct on her part from the time the last child was born to the time of her husband's death, was insufficient to support a finding against her on the charge that she was living in adultery at the time of her husband's death. p. 396.

7. EVIDENCE.—Chastity and Virtue.—Presumptions.—In the absence of evidence to the contrary, a woman is presumed to be chaste and virtuous, while if proven to have been unchaste at a certain time a presumption of a continuance of such unchastity is indulged under some circumstances, but the latter presumption is not without limitation and would not apply against a woman whose life for two years following adulterous living bore all the indicia of chastity. p. 397.

From Pike Circuit Court; *John L. Bretz*, Judge.

Action by Henry H. Hawkins, administrator of the

estate of Lafayette Spade, deceased, against Martha Spade and others. From the judgment rendered, the defendant named appeals. *Reversed.*

*Frank Ely* and *John K. Chappell*, for appellant.
*Richardson & Taylor*, for appellee.

CALDWELL, J.—Appellee, Henry H. Hawkins, as administrator of the estate of Lafayette Spade, deceased, filed his petition in the Pike Circuit Court, asking an order for the sale of a 27-acre tract of land owned by decedent, to make assets for the payment of the debts of the estate. Appellant, the widow, and also the children of decedent were named as defendants. In addition to the averments necessary to the procuring of such an order, there were other allegations to the effect that appellant and decedent intermarried March 4, 1900; that she deserted him within three months, and that thereafter continuously she lived and at the time of the death of decedent she was living, in adultery with James King and others whose names were unknown to appellee. There is a prayer that the title to the lands be quieted against all claims of appellant and that they be sold for purposes aforesaid.

At the request of the parties, the court found the facts specially, and stated conclusions of law thereon. The finding so far as material here is to the following effect: Decedent died intestate in Pike County, Indiana, October 9, 1912, leaving surviving him as his only heirs at law the appellant, his widow, and certain children of a former marriage, and also one child, the fruits of his marriage with appellant. At the time of his decease, he was the owner of the lands described in the petition. Appellant and decedent were married March 4, 1900, and lived together as husband and wife until May 27, 1900, when appellant separated herself from de-

cedent without cause, and ever thereafter lived apart from him. Appellant after the separation had born to her three children. The first was born December 18, 1900, and was a legitimate child of her marriage to decedent. The others were born June 5, 1907, and July 1, 1911, and were both illegitimate, but the evidence is silent as to their paternity. Appellant, after deserting her husband, lived about one year with her father and brother, and thereafter lived as a member of the family of James King, the husband of her twin sister. The appellant's reputation for chastity in the town and township in which she lived has been and is bad. Since about October, 1906, and up to and including October 9, 1912, appellant lived from time to time in the practice of adultery with persons whose names are not disclosed by the evidence.

The court stated a conclusion of law from the facts found that appellant by reason of her adulterous practice of living at the time of the death of decedent was not entitled to share in his estate. Judgment was rendered and decree entered on the conclusions of law that the entire tract of land be sold for the purpose of making assets to pay the debts of the estate, free from all claims of appellant as widow. Error is assigned on the foregoing conclusion of law, and also on the overruling of appellant's motion for a new trial. The only question presented under the latter assignment is respecting the sufficiency of the evidence to sustain the decision.

Considering the first assignment, there is a statutory provision that "If a husband die testate or intestate, leaving a widow, one-third of his real estate shall descend to her in fee simple free from all demands of creditors." §3014 Burns 1914, §2483 R. S. 1881. A further

statute applicable here is as follows: "If a wife shall have left her husband and shall be living at the time of his death in adultery, she shall take no part of the estate of her husband." §3034 Burns 1914, §2496 R. S. 1881. By virtue of §3014, *supra*, appellant, as surviving wife, at the decease of appellee's decedent, became the owner in fee simple of the undivided one-third of the lands involved in this proceeding, unless the facts proved and found by the court bring her within the condemnation of §3034, *supra*. In order that such a result may follow, it must appear that subsequent to the marriage she abandoned her husband, and also that at the time of his death she was living apart from him in adultery. *Wiseman* v. *Wiseman* (1880), 73 Ind. 112, 38 Am. Rep. 115.

It is specially found by the court that within less than three months after appellant and decedent were united in marriage, she separated herself from him without cause, and that she ever thereafter lived separate and apart from him. As to the second element of §3034, *supra*, the finding is as follows: "That since about October, 1906, and up to and including the 9th day of October, 1912, the said Martha Spade has been living from time to time in the practice of adultery with parties whose names are not disclosed by the evidence." A special finding should consist of ultimate facts and as a general rule evidentiary matter included therein will be disregarded. *Eckart* v. *Fort Wayne, etc., Traction Co.* (1914), 181 Ind. 352, 104 N. E. 762; *Dinius* v. *Lahr* (1905), 36 Ind. App. 425, 74 N. E. 1033. Nothing can be added to a special finding by presumption, inference or intendment, and when a special finding is silent upon a material point, it is deemed to be found against the party upon whom rests the burden of

proof. *Donaldson* v. *State, ex rel.* (1906), 167 Ind. 553, 78 N. E. 182; *Garretson* v. *Garretson* (1909), 43 Ind. App. 688, 88 N. E. 624. However, where the primary facts found lead to but one conclusion, there is no occasion for a statement of the ultimate fact. In such a case the ultimate fact will be considered as proven. But where from such primary facts stated in a special finding, a particular inference or its contradiction may be drawn with equal degrees of certainty or plausibility, and if the special finding is silent respecting the ultimate fact, it must be considered as unproven. *Mount* v. *Board, etc.* (1907), 168 Ind. 661, 80 N. E. 629, 14 L. R. A. (N. S.) 483; *Mayer* v. *C. P. Lesh Paper Co.* (1910), 45 Ind. App. 250, 89 N. E. 894, 90 N. E. 651.

Applying these general principles to the finding here, the ultimate fact which appellee was required to establish in order that he might

2. defeat appellant's right as surviving wife to participate in the division of his lands or the proceeds thereof, is that she was living in adultery at the time of her husband's death, she having theretofore separated herself from him. The finding is silent respecting such ultimate fact. We proceed to determine whether the finding contains its equivalent or other facts from which it results as a necessary inference. The finding that she "has been living from time to time in the practice of adultery" is equivalent to a finding that "she has been living from time to time in adultery." *Goodwin* v. *Owen* (1876), 55 Ind. 243, 249. The phrase "from time to time" is synonymous with "occasionally", "at intervals", "now and then". 20 Cyc 852. The finding then is to the effect that since October, 1906, up to and including October 9, 1912, appellant at intervals lived in adultery, or that occasionally she was guilty of adultery. This is practically equivalent to

a finding that between the dates named she occasionally lived in adultery. Assuming that from such a finding there might be deduced an inference that appellant was in the midst of such an interval at the time of her husband's death, yet it can not be said that the facts found compel such an inference. It is just as reasonable to conclude from such facts that while appellant now and then between the dates named was guilty of adultery, there may have been an absence of a continuous purpose and inclination to do wrong, and that previous to her husband's death appellant had reformed and that at that time she was living innocently. Conceding that the facts found are susceptible of different inferences, the one that appellant was living within the condemnation of the statute, the other that she was living virtuously, it was the province of the trial court rather than this court to deduce the ultimate inference.

This the trial court failed to do. It has been

4. held that a single act of adultery committed by the wife does not force the conclusion that she was living in adultery within the meaning of the statute at the subsequent time of her husband's death, but that the fact that she committed such act under circumstances showing a deep degree of abandonment, if proven, might, with

2. other incriminating circumstances, be submitted to the jury to enable it to determine as to her course of life at the time of her husband's decease. *Gaylor* v. *McHenry* (1860), 15 Ind. 383. The case cited refers to *Armstrong* v. *State* (1836), 4 Blackf. 247, and *Winemiller* v. *State* (1858), 11 Ind. 516. In the former it is held that evidence of a single act of gambling in a designated room was admissible as tending to prove that such room was occupied for purposes of gambling, but that it was not conclusive to that end; that it was

for the jury to draw its own inferences from such fact proven, in the light of the attending circumstances. To the same effect is *Winemiller* v. *State, supra*. As some indication of the nature of the circumstances sufficient to compel an inference of a living in violation of §3034, *supra*, we call attention to the following: In *Goodwin* v. *Owen, supra*, a wife, after having been guilty of a number of acts of adultery, abandoned her husband, pursuant to an arrangement with her paramour, Miller, and went to a city where he met her and conducted her to a boarding house, and there installed her. At the time of her husband's death, she was not actually living with Miller, but was being maintained by him in such house where she was continuing her adulterous relations with him. It was held in effect that such facts force the conclusion that she was living in adultery at the time of her husband's death within the meaning of the statute. Likewise, the Kentucky court of appeals, in construing a similar statute, uses this language: "This statute does not mean that she shall constantly live with one man in adultery during her abandonment of the husband in order to forfeit her right of dower or distributable share; but if she admits any man or men to her periodically, or whenever it is convenient or opportunity is afforded, during said abandonment, such conduct constitutes a living in adultery within the meaning of the statute." *Goss* v. *Froman* (1889), 89 Ky. 318, 12 S. W. 387, 8 L. R. A. 102.

In our judgment, the statute here contemplates not only a relation wherein the wife after abandoning her husband is found at the time of his death domiciled with a man other than her husband in a state of adultery, but also a status wherein an inclination to adultery is a present element with the purpose and practice of fol-

lowing such inclination to its logical conclusion at convenience and whenever opportunity affords. If the wife is found so living at the decease of her husband, the statute is applicable. Such in effect is the holding in *Goodwin* v. *Owen, supra*, and *Goss* v. *Froman, supra*. The case at bar is different. The facts found here are not sufficient to force a conclusion of continuity of inclination, purpose or practice, and are not radically inconsistent with an hypothesis that appellant had repented of her evil ways, and that she was living blamelessly at the time of her husband's death. The finding does not support the conclusion of law.

From a consideration of the evidence, it is possible to account somewhat for the uncertainty in the finding. Supplementing the abstract of the finding as above set out, the court included therein the following primary facts, which fairly reflect the evidence: During the years when appellant was living as a member of the King family, she was employed at domestic work in the daytime at the Orphans' Home, near the King residence. With her earnings she clothed herself and children, and also contributed to the supply of the table. There was no evidence of any acts of intimacy between appellant and King, or of any mutual attachment between them, or that appellant kept company with any male person, or that she was out at night with any man or men, other than the inference drawn from the fact of the birth of her illegitimate children. King's wife was away from home but one night while appellant lived in the family, and during that night appellant's brother and sister were at the King home. The birth of the two illegitimate children, of course, establishes that appellant had been guilty of adultery. These events,

however, are conclusive merely that she made two sporadic excursions into the field of infidelity, rather than that she was living in adultery. The second illegitimate child was born July 1, 1911. It was, therefore, begotten about October 1, 1910. Appellee's decedent died October 9, 1912. Thus, relating to a period of two full years immediately preceding the death of her husband, there is not a particle of substantive evidence to show that she was guilty of any improper conduct. The evidence is therefore insufficient to sustain a finding or a decision of the court that she was living in adultery at the time of the death of her husband. In the 7. absence of evidence to the contrary, it is presumed that a woman is chaste and virtuous. *Robinson* v. *Powers* (1891), 129 Ind. 480, 28 N. E. 1112; *Gemmill* v. *Brown* (1900), 25 Ind. App. 6, 56 N. E. 691; 3 Ency. Evidence 54. It is true that where a woman is proven to have been unchaste or to have been guilty of specific acts of adultery at a certain time, a presumption of continuance to a subsequent time is, under some circumstances, indulged. It is only reasonable, however, that there be a limit to the application of this rule. If in a given case there is in fact such a continuance for a long period of time, it is reasonable that there will be some visible overt act, some open manifestation of the fact. Here for a period of two years, there is no evidence that appellant was guilty of a single act of indiscretion or of any lascivious conduct or of any suspicious actions, nor were there any incriminating circumstances, as that she met or associated with men at questionable times or places, or in the midst of improper surroundings, or that her associates were persons of bad repute. Divorce her from her past, and during the two years she environed herself with the *indicia* of chastity as far as the evidence

reveals. Under such circumstances, it is doing violence to mental processes to presume that she was living in adultery at the time of the decease of her husband. As bearing somewhat on the case, see the following: Woodward v. Republic (1896), 10 H. I. 416; Smith v. Smith (1834), 4 Paige Ch. (N. Y.) 432, 27 Am. Dec. 75; People v. Clark (1876), 33 Mich. 112; People v. Squires (1882), 49 Mich. 487, 13 N. W. 828; People v. Jenness (1858), 5 Mich. 305, 322; Zeigler v. Mize (1892), 132 Ind. 403, 31 N. E. 945.

At common law the adultery of the wife did not bar her right to dower. Shaffer v. Richardson (1866), 27 Ind. 112; 14 Cyc 83, 932.

2. There is a statute applicable to the adulterous husband (§3035 Burns 1914, §2497 R. S. 1881), identical in its provisions to §3034, supra. Doubtless the legislative purpose in the enactment of these statutes was to preclude the surviving unfaithful, immoral husband or wife from participating as a distributee in the estate of the deceased spouse, and thus to some extent to promote fidelity to the marital vows. The standard of conjugal unfaithfulness and immorality effective to that end, however, is prescribed by the statute. This standard respecting the wife is that she must have left her husband and be living in adultery at the time of his decease. Under the evidence, the facts here do not sink appellant to the level of the standard.

For errors indicated, the case must be reversed. Under the circumstances, however, it is probable that justice may be more clearly attained by a new trial. Judgment reversed, with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 110 N. E. 1010. As to adultery in the absence of divorce as a bar to dower, see 5 Ann. Cas. 230. See, also, under (1, 4) 14 Cyc 84; (2) 14 Cyc 84; 20 Cyc 852; (3) 38 Cyc 1980, 1985; (7) 16 Cyc 1053, 1082.