**In the Matter of the ESTATE OF Melissa K. PATRICK:**

**Yvonne Griffith, as Personal Representative of the Estate of Melissa K. Patrick, Appellant,**

**v.**

**Jason Patrick, Appellee.**

**No. 17A03–1104–ES–190.**

Court of Appeals of Indiana.

Dec. 7, 2011.

---

David W. Stone IV, Stone Law Office & Legal Research, Anderson, IN, Allen R. Stout, Stout, Stout & McEntarger, PC, Angola, IN, Attorneys for Appellant.

Kevin L. Likes, Likes Law Office, Auburn, IN, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge.

Yvonne Griffith, as the personal representative of the Estate of Melissa K. Patrick (the Estate), appeals the denial of the Estate's motion to dismiss a petition for survivor's allowance filed by Melissa's surviving spouse, Jason Patrick (Patrick). The Estate presents the following restated issue for review: Did the trial court commit clear error in determining that Ind. Code Ann. § 29–1–2–14 (West, Westlaw through end of 2011 1st Regular Sess.) did not divest Patrick of a survivor's share of the Estate of his late wife, Melissa Patrick (Melissa).

We affirm.

Patrick was married to Melissa, who filed for divorce on August 24, 2009. According to Patrick, Melissa "beat [him] to the punch" in filing for dissolution when she did. *Appellant's Appendix* at 75. There was a history of domestic violence in the relationship dating back to the mid–1990s. There was an incident of domestic violence as recently as December 13, 2008, when police were called after Patrick bit and choked Melissa while the two argued. This resulted in the filing of criminal charges against Patrick and the issuance of a no-contact order in March 2009. Following the filing of the divorce petition, a provisional order was entered on or about September 15, 2009 in which the parties agreed that Patrick would have temporary exclusive use of the marital residence.

Shortly after Melissa filed for divorce, Patrick began a romantic relationship with Sarah Jones, whose divorce from her husband would be finalized in November 2009.[1] This relationship included physical intimacy beginning in September 2009. It is undisputed that Patrick immediately began spending the night at Jones's home on occasion, "[o]ne or two nights a week" by Patrick's estimate. *Id.* at 78. According to Jones, by December 2009, Patrick was staying there "two ... to three ... nights a week." *Transcript* at 177. On November 25, 2009, Melissa filed for a protective order against Patrick, alleging that he had

---

1. The record also indicates that Melissa began a relationship with Jones's husband. It is not clear from the record when these relationships (i.e., Patrick's with Sarah Jones and Melissa's with Mr. Jones) commenced, either relative to each other or relative to the filing of the divorce petition.

stalked her and her children and threatened her. A protective order was issued on December 1, 2009 with an expiration date of December 1, 2011. On January 1, 2010, Melissa was murdered by Jones's ex-husband because she had informed him of her wish to end their romantic relationship.

On July 19, 2010, Patrick filed a Petition of Surviving Spouse for a Statutory Allowance, pursuant to I.C. § 29–1–4–1 (West, Westlaw through end of 2011 1st Regular Sess.), which provides as follows: "The surviving spouse of a decedent who was domiciled in Indiana at the decedent's death is entitled from the estate to an allowance of twenty-five thousand dollars[.]" Citing this authority, Patrick requested that "the Court require the personal representative to make distribution of the first $25,000.00 from the estate to Jason Patrick." *Appellant's Appendix* at 21. On July 29, 2010, the Estate filed a Motion to Dismiss Petition of Surviving Spouse for Statutory Allowance, citing three reasons for denying Patrick's petition, only one of which is relevant to this appeal. That contention was that Patrick's petition should be denied because at the time of Melissa's death, Patrick was living in adultery with Jones. The Estate argued that this invalidated Patrick's claim upon Melissa's estate pursuant to I.C. § 29–1–2–14, which states: "If either a husband or wife shall have left the other and shall be living at the time of his or her death in adultery, he or she as the case may be shall take no part of the estate or trust of the deceased husband or wife."

The parties submitted legal memoranda in support of their respective positions and a hearing was conducted on November 10, 2010. At the hearing the parties focused on the details of Patrick's relationship with Jones, including prominently the nature of their physical relationship and the frequency with which Patrick stayed overnight at Jones's house in the four months immediately preceding Melissa's murder. On February 23, 2011, the court denied the Estate's motion to dismiss Patrick's petition for statutory spousal allowance. On March 14, 2011, pursuant to the Estate's motion, the trial court decreed that the February 23 ruling was a final appealable judgment in favor of Patrick. This appeal ensued.

In issuing its ruling, the trial court sua sponte entered findings of fact and conclusions of law. Where a trial court enters findings and conclusions without being asked by the parties or required to do so by rule, specific findings control only as to issues they cover, and a general judgment standard applies to any issues upon which the trial court has not made findings. *Jewell v. City of Indianapolis*, 950 N.E.2d 773 (Ind.Ct.App.2011). When reviewing such findings, we determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* We will reverse a judgment thus rendered only when it is shown to be clearly erroneous, i.e., when it is unsupported by the findings of fact and conclusions thereon, *id.*, or when the trial court applies an incorrect legal standard. *Fraley v. Minger*, 829 N.E.2d 476 (Ind.2005). We defer substantially to the trial court's findings of fact, but we evaluate conclusions of law de novo. *Id.*

The Estate contends the trial court erred in determining that I.C. § 29–1–2–14 does not apply and that Patrick is entitled to a surviving spouse's share of Melissa's estate. The parties contend that the issue in this case can be reduced to a single question: was Patrick "living in adultery" within the meaning of I.C. § 29–1–2–14 at the time Melissa died? I.C. § 29–1–2–14 applies when two elements are met, one of which is indeed that the surviving spouse

was living in adultery at the time the other spouse died. There is, however, a second element-abandonment. The parties have concentrated the lion's share of their arguments on the question of whether Patrick is entitled to a survivor's share of his late wife's estate as a function of whether he was "living in adultery" with Jones at the time of Melissa's death. Indeed, this seemed to be the primary focus of the evidence adduced at the hearing on the Estate's motion to dismiss Patrick's petition for a survivor's allowance. This included evidence pertaining to where Patrick slept and the nature and frequency of his sexual relationship with Jones following his departure from the marital residence. We need not explore this issue, as this appeal may be resolved by considering the element of abandonment.

The current version of I.C. § 29–1–2–14 is a descendent of two related, similar statutes promulgated by the Indiana Legislature in the middle of the nineteenth century. In May 1852, the Indiana Legislature passed 1 R.S. Chapter 27, § 32 (the wife descents statute), which stated, "If a wife shall have left her husband, and shall be living at the time of his death, in adultery, she shall take no part of the estate of her husband." A similar provision pertaining to husbands provided: "If a husband shall have left his wife, and shall be living at the time of her death in adultery, he shall take no part of her estate." 1 R.S. Chapter 27, § 33 (the husband descents statute). Our Supreme Court had occasions to address these statutes in the next seventy-five or so years. Because the two provisions are substantially similar and were eventually combined into one statute addressing "spouses" generically rather than on a gender-by-gender basis, we regard cases addressing either § 32 or § 33 as equally relevant and applicable to the modern incarnation of those provisions, i.e., I.C. § 29–1–2–14.

In *Shaffer v. Richardson's Adm'r*, 27 Ind. 122 (1866), Theron Richardson left his wife, Margaret, and three daughters in April 1851 without telling her that he was leaving or where he was going. Believing he was dead, Margaret ostensibly married Ada Shaffer in 1855. In October 1862, Margaret found out Richardson was still alive and "married" to another woman in another state. Margaret continued to live as the wife of Shaffer. Richardson died in April 1864 and Margaret sought the surviving wife's share of his estate. The administrator of the estate denied the claim, citing the wife descents statute. The trial court entered judgment for the estate, but the Supreme Court reversed.

After tracing the development of this statute in English law, which was referred to as the statute of descents, the Supreme Court concluded there were *two* elements necessary to bar recovery of a survivor's share: living in adultery and abandonment. The court noted that in *Hetherington v. Graham*, 6 Bing. 135 (1829), the argument was made that the right to a survivor's share (or, in that case, dower) required that the surviving spouse must have left the now-deceased spouse for the person with whom he or she was living in adultery at the time of the spouse's death. Chief Justice Tindal rejected that argument, clarifying that abandonment was essential, but it need not be connected to the person related to the second element—i.e., adultery. Chief Justice Tindal stated: "We hold the proper construction of the statute to be what the words still will warrant, that if a woman leaves her husband with her own free will, and afterwards lives in adultery, the dower is forfeited." *Shaffer v. Richardson's Adm'r*, 27 Ind. at 126 (original citation unattributed). With this in mind, the *Shaffer* court held that the statute of descents operated only where the estate of the deceased spouse

established that the surviving spouse had left—or abandoned—the spouse and the marriage, i.e.:

> It seems evident to us that a proper construction of the *English* statute requires that there should be a voluntary abandonment of the husband by the wife, as well as her subsequent adultery, to bar dower. Such is clearly the construction given to it by the *American* courts, and, we think, the leading *English* cases are to the same effect. But however that may be, we must presume that our statute, in so far as it can be deemed to have been based on the *English* statute, was enacted in view of the construction given to that statute by the *American* courts. The language of the thirty-second section is plain, unequivocal and explicit: "If a wife shall have left her husband, and shall be living, at the time of his death, in adultery," & c. So long as language can be made to express ideas, no room would seem to be left here for construction; and we cannot ignore or disregard the requirement that the wife must have left the husband, and hold that the fact alone of her living in adultery at the time of his death bars her claim in her husband's property, without a total disregard of the plain letter as well as the spirit of the act."

*Id.* at 127–28. Clearly, the foregoing conveys the court's conclusion that the statute of descents bars recovery only where the evidence establishes that the surviving spouse (1) voluntarily abandoned the deceased spouse, and (2) was living in adultery at the time of the spouse's death. *See also Spade v. Hawkins,* 60 Ind.App. 388, 110 N.E. 1010, 1013 (1916) ("[t]his standard respecting the wife is that she must have left her husband and be living in adultery at the time of his decease").

The "leaving" element was further refined in *Goodwin v. Owen,* 55 Ind. 243 (1876). In that case, the wife, Jennie, commenced a sexual relationship with a paramour, James Miller, left her husband William, and proceeded to Indianapolis, where she lived in a boarding house that Miller had secured for her. At the time of William's death, Jennie was still at the boarding house. Although she did not live there with Miller, she was "maintained by, and continued her adulterous intercourse with, him." *Id.* at 249. Jennie claimed an ownership interest in her late husband's property and mortgaged the property to pay her legal fees in the action to secure the asserted interest. William's estate opposed her claim of ownership. The trial court ruled for the estate and the Supreme Court affirmed. In so doing, the court noted that Jennie had abandoned her husband "without cause to justify her so doing, and never returned to his home." *Id.* at 249. We believe this conveys the notion with respect to the "leaving" element that it must have been voluntary and without justification, i.e., that it was a product of unfettered will and that there was no compelling moral or practical reason to have left the marital home in the first place.

More recently, in *Estate of Calcutt v. Calcutt,* 576 N.E.2d 1288 (Ind.Ct.App. 1991), *trans. denied,* this court reaffirmed *Shaffer, Spade,* and *Goodwin* in this respect in indicating that pursuant to I.C. § 29–1–2–15 (West, Westlaw through end of 2011 1st Regular Sess.), in order for the prohibition in I.C. § 29–1–2–14 to apply, the surviving spouse must have abandoned the decedent before his or her death. *See Estate of Calcutt v. Calcutt,* 576 N.E.2d at 1294 ("[b]ecause both of the statutes upon which the estate relies for this segment of their argument [i.e., I.C. § 29–1–2–14 and I.C. § 29–1–2–15] require abandonment ..."). Further, we defined "abandonment" in this context as follows: "[T]he act

of a husband or wife who leaves his or her consort willfully, without justification either in the consent or wrongful conduct of the other, and with an intention of causing a perpetual separation of the parties...." *Id.* (citing *Morehouse v. Koble et al.,* 80 Ind.App. 418, 141 N.E. 254 (1923)). Moreover, in *Hill v. Taylor,* 186 Ind. 680, 117 N.E. 930, 931 (1917), our Supreme Court was again called upon to construe the meaning of the husband descents statute, by then codified at Section 3036, Burns 1914, and held, "if the separation is by mutual consent there is no desertion by either party." As this court explained in *Morehouse v. Koble,* 80 Ind.App. 418, 141 N.E. 254, 255 (1923):

> The separation of appellant and his wife was a separation by mutual consent. What he did was with her consent, and in our judgment does not amount to an abandonment within the meaning of the [husband descents statute]. Abandonment as used in this statute, and as applied to the instant case, implies a want of consent, an unwillingness, on the part of the wife.

 Taking the foregoing cases together, we conclude that in order to divest Patrick of his survivor's share pursuant to I.C. § 29–1–2–14, the Estate was required to prove that he "left" Melissa. "Left" in this context means abandoned, i.e., left Melissa "willfully, without justification either in the consent or wrongful conduct of [Melissa], and with an intention of causing a perpetual separation of the parties...." *Estate of Calcutt v. Calcutt,* 576 N.E.2d at 1294. Moreover, Patrick did not "leave" Melissa within the meaning of I.C. § 29–1–2–14 if the evidence indicated that the parting was mutually agreed upon. *See Morehouse v. Koble et al.,* 80 Ind.App. 418, 141 N.E. 254.

 The evidence demonstrated that Patrick had been staying at his father's house for several weeks when Melissa filed for dissolution. Patrick testified that he had moved out of the marital residence because of Melissa's infidelity, although he acknowledged at the hearing that he was not without fault in causing the then-existing marital discord, perhaps referring to the physical abuse Melissa had suffered over the years at his hands. In fact, Patrick also acknowledged that he was about to file for divorce when Melissa did so. In any event, the evidence supports the trial court's finding that Patrick and Melissa separated by mutual consent, which we reiterate does not support a finding of abandonment. *See Hill v. Taylor,* 186 Ind. 680, 117 N.E. 930; *Morehouse v. Koble,* 80 Ind.App. 418, 141 N.E. 254. Moreover, from the time he moved into his father's residence until the time Melissa was murdered, Patrick exercised regular visitation with his children, including overnight visits, and paid regular child support. This evidence was sufficient to support the trial court's finding that "Jason did not abandon Melissa and that even if the facts had established that Jason abandoned Melissa, (which they did not) the Estate failed to prove that Jason did so without just cause." *Appellant's Appendix* at 14. Accordingly, because the Estate failed to prove the element of abandonment, the trial court did not clearly err in denying the Estate's motion to dismiss Patrick's petition for survivor's allowance.

Judgment affirmed.

DARDEN, J., and VAIDIK, J., concur.