# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**J. CLAYTON MILLER**
Jordan Law, LLC
Richmond, Indiana

ATTORNEY FOR APPELLEES:

**JAMIE H. HARVEY**
Smith Harvey Law Office
Connersville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE ESTATE OF )
STEPHEN T. HANNEBAUM, Deceased, )
)
RENADA FAY HANNEBAUM, )
)
    Appellant, )
)
    vs. )    No. 81A05-1301-ES-17
)
MARY REBECCA HANNEBAUM )
and STEPHEN T. HANNEBAUM, )
II, as Personal Representatives of Estate of )
Stephen T. Hannebaum, )
)
    Appellees. )

**FILED**
Dec 19 2013, 11:11 am
*Kevin S. Smith*
**CLERK**
of the supreme court,
court of appeals and
tax court

APPEAL FROM THE UNION CIRCUIT COURT
The Honorable Matthew R. Cox, Judge
Cause No. 81C01-1105-ES-8

**December 19, 2013**

**OPINION - FOR PUBLICATION**

**SHEPARD, Senior Judge**

Under Indiana's probate law, a spouse who has voluntarily left the marital residence and engaged in an adulterous relationship is barred from inheritance by intestacy. In this case, the issue is what evidence suffices to invoke this disqualification.

## FACTS AND PROCEDURAL HISTORY

Stephen T. Hannebaum and Renada Fay Hannebaum were married in June 2002. On August 1, 2007, Renada moved out of the marital residence and began dating Doug Wilson. Renada filed a petition for dissolution in October 2007, but her divorce from Stephen was never finalized. Stephen died intestate on April 3, 2011.

Renada paid Stephen's funeral expenses, and she subsequently petitioned the court to open a supervised estate and name her personal representative. Stephen's mother Mary and his son Stephen II filed an objection to the appointment of Renada. Following a hearing, the court appointed Mary and Stephen II as personal representatives. Renada then filed a motion indicating her desire to be considered an heir of Stephen's estate. The court held a hearing to determine heirship and in due course it issued an order finding that Renada had forfeited her right to inherit from Stephen's estate.

## ISSUE

Renada claims on appeal that the evidence did not establish either of the conditions necessary to exclude her as an heir to Stephen's estate.

## DISCUSSION AND DECISION

Many American jurisdictions adopted the rule that prevailed in England at least since the reign of Edward I — that someone who voluntarily leaves a spouse and is living

2

in adultery with another person when that spouse dies may not inherit through the laws of intestacy. Indiana embraced this policy no later than the Revised Statutes of 1852. 1 R.S. Chapter 27, §§ 32, 33. The present version of the Indiana statute says:

> If either a husband or wife shall have left the other and shall be living at the time of his or her death in adultery, he or she as the case may be shall take no part of the estate or trust of the deceased husband or wife.

Ind. Code § 29-1-2-14 (2005).

The history and meaning of this statute was thoughtfully explored early on in an opinion by Justice Elliott. *See Shaffer v. Richardson's Adm'r*, 27 Ind. 122 (1866). More recently, Judge Friedlander has helpfully traced the decisions issued during the intervening decades. *In re Estate of Patrick*, 958 N.E.2d 1155 (Ind. Ct. App. 2011), *trans. denied*. The short of the matter for present purposes is that to deny a surviving spouse an inheritance, the estate must establish that the surviving spouse (1) was living in adultery at the time of the deceased's death and (2) voluntarily abandoned the deceased spouse. *See id.* at 1158-59.

In resolving the present dispute, the trial court sua sponte entered findings of fact and conclusions of law. When the trial court enters findings and conclusions without being asked or required to do so, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issues upon which the court has not made findings. *In re Estate of Powers*, 849 N.E.2d 1212, 1216 (Ind. Ct. App. 2006). We will reverse the judgment only when it is shown to be clearly erroneous, i.e., when it

3

is unsupported by the findings of fact and the conclusions entered on those findings. *Id.* With the benefit of the foregoing cases and this standard of review in mind, we proceed to the two points on which Renada claims the evidence is inadequate.

## A. *Living in Adultery?*

Renada admits to dating Doug Wilson after she left Stephen and to spending some nights alone with him at his residence. Tr. pp. 6, 7; Appellant's Br. p. 7. She alleges, however, that there was no evidence presented that she was in a sexual relationship with Wilson at the time of Stephen's death.

The fact of sexual relations must usually be inferred from the circumstances in adultery cases because "direct proof of sex acts between the parties is virtually impossible to produce." *Oliver v. Estate of Oliver*, 554 N.E.2d 8, 11 (Ind. Ct. App. 1990). Thus, an adulterous relationship may be inferred from circumstantial evidence establishing an opportunity for such conduct. *Id.*

The evidence Stephen's estate cites in support of the finding that Renada was living in adultery when Stephen died in April 2011 was: (1) Renada's confirmation that she began dating Doug Wilson "after [she] left Stephen" in August 2007, (2) her agreement during trial that she "spent some nights at Mr. Wilson's residence alone with him," and (3) testimony from a private investigator who observed Renada three months after Stephen died entering Wilson's residence through the garage by punching in a code at the door. Tr. pp. 6, 7, 12-14.

4

The first two items on this list of the pertinent evidence, identified as to date only as being sometime after August 2007, offered only the slightest hint at whether Renada was sexually involved with Wilson at the time Stephen died on April 3, 2011. Similarly, if the private investigator's testimony about Renada's comings and goings three months after the death stood alone, it might well not be probative on the question of adultery on the day of Stephen's death.

The three pieces of evidence together, though, suggest a continuing behavior that we conclude is sufficient to sustain the trial court's finding of an adulterous relationship between Renada and Wilson in April 2011.

### B. Voluntary Departure?

Although the parties do contest the finding on adultery, their arguments focus primarily on abandonment. "Voluntary abandonment" in the context of Indiana Code section 29-1-2-14 means that the departing spouse intended a permanent separation rather than a temporary one, and that the deceased spouse neither agreed to the separation nor caused it. *See In re Estate of Patrick*, 958 N.E.2d at 1160.

Renada asserts that she did not voluntarily abandon Stephen; rather, she maintains that she fled the marital home to escape domestic abuse. The trial court's judgment, however, rests in substantial part on finding that the only identified instance of abuse occurred after Renada had already moved out of the marital residence.

At the hearing, Renada testified unequivocally that she moved from the marital residence on August 1, 2007. Her counsel argued, as he does on appeal, that Stephen

5

committed battery before Renada moved out of the residence and that this battery was the cause of her moving out. Renada's counsel asked the trial court to take judicial notice of its own record in cause number 81C01-0709-CM-239, the criminal case arising from Stephen's battery upon Renada.

On appeal, the Estate has included in its appendix some of the documents of which the trial court presumably took judicial notice in cause number 81C01-0709-CM-239. The affidavit of probable cause for that proceeding and its attached Exhibit A show that the battery occurred on September 9, 2007, at 508A Harbor Court in Liberty, Indiana. These documents indicate that this address was Renada's place of residence at the time and that Stephen's address was 2605 West Snake Hill Road in Liberty. If there were any other acts of violence, the record does not establish them, either through documentary evidence or Renada's testimony. Based upon this evidence, the trial court properly found that Renada voluntarily abandoned Stephen. As for whether Renada left Stephen permanently rather than temporarily, we think that a court can find permanent departure where, as here, a spouse leaves the marital residence, files for dissolution, and remains away for roughly four years, notwithstanding the fact that a final decree of dissolution had not been issued.

### CONCLUSION

We therefore affirm the trial court's judgment.

MATHIAS, J., concurs.

ROBB, C.J., concurs in result.

6