ROWELL, ADMX. OF ESTATE OF ROBERT ROWELL, DECEASED *v.* ROWELL, et al.

No. 43230          December 18, 1964          170 So. 2d 267

*Melvin, Melvin & Melvin,* Laurel, for appellant.

*J. M. Travis,* Meridian; *Joe A. McFarland, Jr.,* Bay Springs; *Cecil F. Travis, Robert C. Travis, M. Curtiss McKee, Lawrence J. Franck,* Jackson, for appellees.

McELROY, J.

Robert Rowell died intestate on June 23, 1962. His widow, Mrs. Georgia Estell Rowell, filed a petition for appointment as administratrix of his estate on June 26, 1962, and a decree appointing her was filed in the Chancery Court of the First Judicial District of Jasper County, Mississippi on June 26, 1962, together with the administratrix's bond, administratrix's oath, and letters of administration. Thereafter, administratrix assumed the responsibilities imposed upon her by law. On August 28, 1962 there was filed a petition to remove administratrix, to require an accounting, to secure the appointment of an administrator de bonis non, to declare and determine the heirs at law of Robert Rowell, deceased, and for related relief. The petition to remove the appellant as administratrix was granted by the court; thus this appeal.

We are of the opinion that the learned chancellor was in error in removing Mrs. Rowell as administratrix of her husband's estate, and we are reversing the case and reinstating the appellant as administratrix of her deceased husband's estate and his sole heir.

The petition to remove Mrs. Rowell as administratrix of the estate of Robert Rowell, deceased, was filed by W. B. Rowell, Tillman Rowell, Tom Rowell and Mrs. Clarence Lightsey, who claimed they were the only brothers and sisters of Robert Rowell. The petition alleged that the Rowells were married on December 25, 1938 in Lamar County, Mississippi; that Robert Rowell had owned and operated in and about the city of Laurel establishments and places of business known as night clubs; that he had been unusually successful and had accumulated large sums of money and property; that he had numerous employees; and that he had sleeping quarters in his place of business.

The petition further alleged that about 1945 Mrs. Rowell became infatuated and enamored with a person

who worked in Mr. Rowell's business and began to carry on an adulterous affair with him; that on numerous occasions she admitted adultery with this person; that this took place on the premises known as the Twenty Grand,'' as well as other places; that in the latter part of 1946 Robert Rowell became seriously ill, was confined a long time in a hospital in Laurel, Mississippi, and later was transferred to a hospital in New Orleans, Louisiana; that in 1947 he returned from the hospital, became aware of the adulterous relationship being carried on by his wife, and thereafter he and Mrs. Rowell did not live for any period of time as husband and wife.

The petition alleged that about the time Mr. Rowell returned from the hospital Mrs. Rowell and the person she was having this relationship with established a more permanent and stable basis, to the extent they started living together as husband and wife and established their living quarters in the same place; that this relationship went on from 1947 until approximately 1954, and that during this time Mrs. Rowell lived in open adultery with the person at the Pine Grove Club and other places.

Petitioners stated that in the late 1940's Robert Rowell, due to his ill health, was forced to retire from active participation in his business activities; that he returned from Jones County, Mississippi to his home place in Jasper County, Mississippi, and lived there approximately four years with his sister; that thereafter he resided with his brother, Tillman Rowell, in Jasper County, Mississippi continuously for eleven years until his death on June 23, 1962. They stated that Mrs. Rowell had living quarters in the city of Laurel, and in 1958 moved to the city of Chickasaw, Mobile County, Alabama.

The petition concluded that Mrs. Rowell, by virtue of her desertion of Mr. Rowell, her abandonment of their marital home and their marital relationship, and her living in open, brazen, and notorious adultery with

a named person, is not entitled to maintain that she is the widow and the sole heir at law of Robert Rowell, deceased; that she had, by her own acts and conduct as aforesaid, under the laws of this state as declared, determined and construed by the courts, estopped herself from any rights to share in the estate of Robert Rowell, and is estopped to claim all or part of his estate.

The appellant, Mrs. Rowell, defendant below, answered the petition. She admitted she and Robert Rowell were married on December 25, 1938 in the Town of Purvis, Lamar County, Mississippi, and that Mr. Rowell with her help accumulated property and money by running night clubs. She stated they had several different living places in Laurel. She denied that she had a clandestine relationship and infatuation with another person, or that she began to carry on adulterous affairs with the person. She denied these relationships ever existed. Appellant, defendant below, alleged in fact that she and Robert Rowell lived together in apartments uptown, that when Mr. Rowell returned from the hospital they lived in an apartment uptown, and that during his recuperation Mrs. Rowell and her mother waited on him and nursed him back to his health.

Mrs. Rowell denied that she had fully and completely abandoned and terminated her marital relationship with Rowell, and alleged the truth to be that this marital relationship existed until the death of Robert Rowell, that it continued from and after the year 1947 until June 1962, the date of Mr. Rowell's death. She denied that at any time during the fifteen years the marital relation was not resumed. She alleged that they lived together as husband and wife, and that Mr. Rowell represented to the general public and his friends and associates that she was his wife; that he often referred to her as his wife; that they lived in the same apartment and cohabited as husband and wife; that she often introduced

Robert Rowell to her friends, the general public and their associates as her husband; that they had a joint account at the drug store, grocery store, and other businesses in Laurel; that this relationship continued for years.

Defendant stated that in 1954 the health of Robert Rowell began to fail and it was necessary for him to move out in the country; that she was at that time working in Laurel, and they agreed that he would go to the farm in Jasper County and that she would continue to live and work in Laurel; that Mr. Rowell often returned to their apartment in Laurel and would stay a few days, and during these times they lived together as husband and wife, occupied the same bedroom, and slept together, so long as Mrs. Rowell lived in Laurel. Defendant alleged there was a mutual agreement between her and Mr. Rowell that she go to Mobile and take a better job there, and that the relationship of husband and wife continued, although Mr. Rowell did not spend as much of his time with her in Mobile as when she lived in Laurel. On occasions Mr. Rowell would spend the weekend with the defendant, and this continued until his death.

It is to be noted that nowhere in the bill of complaint or the answer is there any reference to a bigamous marriage of Mrs. Rowell. Nowhere in the record is there an attempt to prove there was a bigamous marriage. The only proof shown is that there were acts of adultery. There is proof in the record that Mr. Rowell knew about his wife, and before their marriage had made a statement that he was going to marry her and reform her. There is further proof that he knew of her acts of adultery, and that he forgave her and lived with her afterwards. The proof is that on many occasions he would go out with her and that they stayed together and lived together, and that while she was in Alabama he went there, took her to the hospital, and paid her

hospital bill. From the record it appears that at all times, even while running their night club business, Mrs. Rowell had good jobs and was earning good salaries. She had a son by a former marriage, and he testified to this effect. There is proof in the record that just a short time before he died Mr. Rowell made a trip to see Mrs. Rowell in Alabama. Mrs. Rowell's mother and sister testified that while he was there Mr. and Mrs. Rowell occupied the same room, they drove around together, and he left money with her.

There are many assignments of error, and several are well taken. However, the Court will consider only the following: (1) The lower court erred in its opinion and finding of fact. The opinion and finding of fact are manifestly wrong and against the weight of the evidence. (2) The court erred in finding that the widow, Mrs. Georgia Estell Rowell, was not entitled to the husband's entire estate, real and personal, pursuant to section 470, Mississippi Code Annotated (1956). The court erred in holding that the widow, Mrs. Georgia Estell Rowell, was estopped by conduct to inherit the estate of her deceased husband.

It is not necessary for us to recite or pass upon the evidence relative to the alleged misconduct of the appellant. If the wife is estopped on the grounds of adultery, the court is right, but we are not holding that a spouse is estopped on the ground of adultery only. It is true that in previous cases this Court has said that a spouse could by misconduct estop himself or herself from inheriting. However, in each of those cases there was a second or bigamous marriage, whereby the spouse had in the strongest way possible save a divorce renounced the first marriage. In this case there is no allegation and no proof of a bigamous marriage, and we are unwilling and consider ourselves without authority to extend the doctrine of estoppel under the facts here shown.

Mississippi Code Annotated section 470 (1956) states:

If a husband die intestate, and do not (*sic*) leave children or descendants of children, his widow shall be entitled to his entire estate, real and personal, in fee-simple, after payment of his debts; but where the deceased husband shall leave a child or children, by that or a former marriage, or descendants of such child or children, his widow shall have a child's part of his estate, in either case in fee simple. . . .

The only statutory exception from the inheritance that we can find is Mississippi Code Annotated section 479 (1956), entitled "A person who has killed another not to inherit from him." Mississippi has no statute that bars the wife or husband from recovery on account of abandonment, desertion, non-support or adultery.

The Alabama court, in construing a statute like ours on descent and distribution, stated that where a wife had been separated from her husband approximately four years prior to his death and had lived with another man as his wife, since the statute made no exception regarding misconduct on the part of the wife, the court could engraft none. As long as the marriage relation continued in law, the rights of the wife continued under the statute. The court stated in Nolan v. Doss, 133 Ala. 259, 261-62, 31 So. 969, 969-70 (1902):

Code, § 1462, provides as follows: "The personal estate of persons dying intestate as to such estate, after the payment of debts and charges against the estate, is to be distributed in the same manner as his real estate, and according to the same rules; except that the widow, if there are no children, is entitled to all of the personal estate," etc. The statute makes no exceptions on account of the wife's conduct, not even in cases of voluntary abandonment by her of the husband. The law, as it is written, is plain, and it is not within the province of the courts to ingraft upon it any exceptions. As long as the marriage re-

lation, in law, continues, just so long the rights of the wife under this statute exist. The evidence, without dispute, showed the marriage of Julia and Otis; that they lived together as husband and wife for many years, and up to about four years before the death of Otis; and that the said Otis died leaving no children. On this state of the proof, under the statute, Julia was entitled, as the widow of decedent, to all of the personal property of the estate of the decedent intestate, after the payment of the debts and charges against the estate.

The evidence offered by appellants tending to show that Julia, after separation from her husband, lived and cohabited with another man, holding herself out as his wife, was properly excluded, as being immaterial to the issue. The doctrine of estoppel insisted on by counsel has no application.

Accord Gates v. Walker, 8 La. Ann. 277 (1853), and Newland v. Holland, 45 Tex. 588 (1876).

In Wiseman v. Wiseman, 73 Ind. 112, 113-114, 38 Am. Rep. 115, 116 (1880), the court said:

One general rule determines the question of the sufficiency of all these answers, and that rule, shortly stated, is: Under our statute, a surviving wife, who has not conveyed or relinquished her interest in the property of the husband, or accepted a jointure, or received a valid antenuptial settlement, can be deprived of her rights in the lands of her deceased husband for one cause, and for one cause only, and that is the cause prescribed in the 32d section of the statute of descents, 1 R.S. 1876, p. 413. The right of a surviving wife can only be defeated by showing that at the time of the husband's death she was living apart from him in adultery. Shaffer v. Richardson's Adm'r, 27 Ind. 122. Our statute is imperative, its words are mandatory; the surviving wife *shall* take an interest in the lands of the deceased husband. The only cause

which will bar this right is the one just named. It is useless for counsel, and it would be equally so for the Court, to expatiate upon the injustice of a rule which will allow a. wife who has lived apart from her husband for nearly half a century to come in at his death and seize one-third of the property accumulated by him during the time she lived in concealment from him. With the Legislature, such an argument might have weight; with us it can have none. An all-sufficient answer from us is, "Ita lex scripta est." (These words translated into English are "So the law is written." Black, Law Dictionary 1014 (3d ed. 1933).)

Accord Wax v. Wilson, 101 So. 2d 54 (Fla. 1958); Spade v. Hawkins, 60 Ind. App. 388, 110 N.E. 1010 (1916).

Another case pertinent to the issue is In re Torres' Estate, 120 P. 2d 816, 818, 139 A.L.R. 481 (Nev. 1942), where the court said:

The great weight of authority is against respondents' contention that appellant is barred by his misconduct from taking any part of decedent's estate. . . .

In any event this court, as has been seen, has aligned itself with the decided weight of authority in holding that wrongful conduct, however reprehensible, will not bar a guilty surviving spouse from inheriting the estate of the deceased spouse, or such portion thereof as is given him of her, under the plain provisions of the statute of descent and distribution.

Since Mr. Rowell did not convey his property or leave a will or obtain a divorce, his wife was entitled to his property under Mississippi Code Annotated section 470 (1956), unless her conduct would have been so bad as to have constituted a bigamous marriage.

No Mississippi cases have been cited, nor have we been able to find any, where either spouse has been estopped on the ground of adultery.

In all the cases cited by appellees in their brief a bigamous marriage is involved. We are of the opinion that Mrs. Rowell was not estopped by her conduct to inherit the estate of her deceased husband, and the learned chancellor was in error in so holding.

Williams v. Johnson, 148 Miss. 634, 114 So. 733 (1927), held that where a husband had deserted his wife and lived apart from her for more than thirty years, and had in the meantime married another woman without having obtained a divorce, he was estopped by his conduct from claiming rights to renounce the will of his first wife, who was deceased. The case further stated that it is a well-settled principle in all jurisdictions that the conduct of the husband under such circumstances is sufficient to estop him in his rights to renounce the will of his deceased wife, citing Shraden v. Shraden, 119 Miss. 526, 81 So. 227 (1919), and Williams v. Lee, 130 Miss. 481, 94 So. 454, 28 A.L.R. 1124 (1923). It would appear from all of these cases that the question in the mind of the Court was not so much the conduct, but whether a bigamous marriage resulted. That is when the doctrine of estoppel sets in. In Williams v. Lee, *supra,* there is a bigamous marriage of the husband. Referring to Mississippi Code Annotated section 470 (1956), which regulates the descent and distribution of property in this state, the Court said the wife is made an heir to the husband and that the courts have no authority to ingraft exceptions on the statute. Further, conceding that the wife by estoppel could be deprived of her right of asserting her heirship to her husband, the evidence shows no element of estoppel. The nearest approach to it was mere silence on the part of the legal wife. Nothing in the record showed that she either incurred or assented to the illegitimate marriage of her husband. The Court said it could not give assent to the proposition that mere knowledge and silence on her part estopped her from asserting her heirship.

The case of Walker v. Matthews, 191 Miss. 489, 3 So. 2d 820 (1941), is complicated. Nevertheless, the facts are that George Matthews was married to Lillie by virtue of a common law marriage, having lived with her as her husband for a number of years. He was a railroad man, and had a girl in almost every whistle stop. He never got a divorce during their marriage which lasted from 1899 until Lillie's death in 1911, even though he had gotten a license and gone through a marriage ceremony with Fannie. The case merely held that Fannie was estopped from claiming that she was the lawful wife of George and had any right to lay claim to his property. It therefore held that Fannie was the one that was estopped, even though she had been ceremonially married to a man who had never been divorced from Lille. We do not believe that this case applies under the facts here. In other words, Lillie, from the facts, had never committed any bigamous marriage.

In Minor v. Higdon, 215 Miss. 513, 61 So. 2d 350 (1952), a bigamous marriage was involved. The Court held the bigamous marriage was sufficient to work an estoppel against the woman claiming to be the lawful widow of an intestate decedent. In this case the Court stated: "This Court has held in a long line of decisions that a wife may be estopped by a subsequent marriage from attempting to prove the invalidity of a later marriage, of her former husband for the purpose of establishing her claim to the proceeds of life insurance policies payable at his death . . . ." This case goes into minute detail concerning bigamous marriages in Mississippi. We do not believe this case helps the appellees in any manner in trying to establish their claim, due to the fact that it involved the second bigamous marriage of the deceased husband rather than the appellee in the case.

The appellees cite the case of Thomas v. Contractor's Material Company, 213 Miss. 672, 57 So. 2d 494 (1952). In their brief appellees say it "bespeaks the court's

righteous indignation over conduct precisely of the kind of which appellant stands here convicted." This case says, "She superimposed his name above her former title and the white flags of their union fluttered from the nursery clothes lines. She was not staying apart from her lawful husband for any cause that we can justify.

"She had not only abandoned the curtilage of Thomas but had quitted the protection of the law. Between herself and the rights of a beneficiary, she had erected the barrier of estoppel, reinforced by facts that deny her access to the statute. Her plea is inaudiable above the accusing protests of outraged law. Her outstretched hands are not clean." 213 Miss. at 679, 57 So. 2d at 495.

Appellant was and had been for six or seven years living in adultery with one Williams, by whom she had several children. We see no such facts in the record in this case.

The most recent case we find on this question is Marshall v. Marshall, 243 Miss. 472, 138 So. 2d 482 (1962). The facts are that Annie Marshall was married to Sam Marshall on December 26, 1906, and there had not been a termination of the marriage by divorce. It was shown that Annie, after leaving the home of Sam Marshall about 1931, had lived with several different men. She was therefore estopped by her conduct from claiming any right in the estate of Sam Marshall, since her claim arose from her marriage and the plea of estoppel involved matters occurring prior to the death of Sam Marshall. The Court further stated the cases where this Court has sustained the plea of estoppel against a wife or husband, have been cases where there was a willful abandonment and desertion and a second and bigamous marriage. The Court remarked:

> Our Court has stated that generally wilful desertion or abandonment is held to estop a spouse from inheriting from the other. ... It has been held numerous

times that a bigamous marriage will estop one from inheriting from his or her spouse. 243 Miss. at 478. The Court, however, then made this statement:

There was some evidence from which a person by conjecture or inference may have considered that Annie was guilty of occasional acts of adultery, but there was no clear and satisfactory proof of such acts. 31 C.J.S. 457. Further it has been stated, "It is generally held that adultery on the part of either spouse is not a bar to taking a distributive share in the estate of the deceased." 71 A.L.R. 282. See also 26A C.J.S. 640. 243 Miss. at 479.

The record shows only an occasional act of adultery; nowhere is there any proof that there was a bigamous marriage on the part of the appellant.

In 26A C.J.S. *Descent and Distribution* section 59 (1956) the following is stated:

In a number of jurisdictions, however, by virtue of express statutory provisions, a surviving wife is not entitled to succeed to her husband's estate where she had abandoned or willfully and maliciously deserted him . . . . Condonation by the injured party, however, may restore the rights of the erring spouse to succeed to the estate of the one injured provided the condonation is complete and accompanied by cohabitation.

The only statutory disqualification from inheritance in Mississippi is Mississippi Code Annotated section 479 (1956), entitled "A person who has killed another not to inherit from him." That statute is:

If any person willfully cause or procure the death of another in any way, he shall not inherit the property, real or personal, of such other; but the same shall descend as if the person so causing or procuring the death had never been in being."

From the record it appears that there might have been acts of adultery on the part of the appellant, but there is certainly no proof of cohabitation to the

extent that a bigamous marriage exists. Even though the record may indicate that the husband left appellant promising that he would build a home in Jasper County, he never did build a home. There was not, however, an absolute desertion, for the simple fact that the record is replete with times when the deceased visited with his wife, took her to the hospital, paid her hospital bill, made numerous visits, spent nights with her, and the record shows no denial of this up to a short time before his death.

As a matter of law, we are holding that the learned chancellor was in error in sustaining the petition of the appellees, and disinheriting the widow and the setting aside of the widow's allowance and the probation of the estate of the deceased filed by the appellant. The case is therefore reversed, and judgment is here entered for the appellant, reinstating her as the administratrix of the estate, and as the sole heir of the deceased, Robert Rowell.

Reversed and judgment rendered.

*Kyle, P. J., and Ethridge, Jones and Patterson, JJ.,* concur.