**Warren K. OLIVER, Appellant
(Plaintiff Below),**

v.

**ESTATE OF Dorothy Myers OLIVER,
Appellee (Defendant Below).**

No. 16A01–9002–CV–54.

Court of Appeals of Indiana,
First District.

May 22, 1990.

Jack R. Shields, Shields & Jones, Batesville, for appellant.

Ronald Beard, Greensburg, for appellee.

ROBERTSON, Judge.

Warren K. Oliver appeals a judgment in favor of the estate of his deceased wife, Dorothy Myers Oliver, which effectively amounted to a denial of both his claim of entitlement to the value of a life estate purportedly devised to him and his alternative claim of entitlement to the statutory survivor's allowance provided by IND. CODE 29–1–4–1.

We affirm.

Dorothy Myers and Oliver were married in June, 1978. It was the second marriage for both. In April of the following year, the Olivers made a joint will, agreeing to take nothing from the other's estate. In 1983, Dorothy, who suffered from physical ailments associated with diabetes, entered a nursing home and a guardianship was established to handle her business affairs. Dorothy died July 23, 1988.

As best we can discern from the record, after the probate of Dorothy's will, Oliver filed alternative claims against the estate. The first appears from a practical standpoint to be simply a petition to construe the will. Oliver claims that Dorothy devised to him a life estate in her residence, which seven years later was sold by her conservator to maintain her and pay for her medical care.

The estate argues initially that we are precluded from reviewing this issue because Dorothy's will never was offered into evidence and has therefore not been properly made a part of the record before us. Should we reach the merits of Oliver's argument, however, the estate argues that whatever the devise to Oliver intended, that devised has been adeemed by extinction; hence, the trial court's judgment on Oliver's first claim can be sustained on that basis. We agree; accordingly, we assume without deciding that the will is properly part of the record and that Dorothy intended to devise some interest in her residence to Oliver.

There is no real dispute that had Dorothy been functioning without the aid of a guardianship and sold her residence, the devise to Oliver would have been adeemed by extinction. *Pepka v. Branch* (1973), 155 Ind.App. 637, 294 N.E.2d 141. The issue turns upon whether Oliver is entitled to the protection afforded by I.C. 29–1–18–44, which the estate concedes was in effect at all times pertinent to this case. I.C. 29–1–18–44 provides:

> In case of the guardian's sale or other transfer of any real or personal property specifically devised by the ward, who was competent at the time when he made the will but was incompetent at the time of the sale or transfer and never regained competency so that the devised property is not contained in the estate at the time of the ward's death, the devisee may at his option take the value of the property at the time of the ward's death with incidents of a general devise, or the proceeds thereof with the incidents of a specific devise.

Oliver maintains that the statute must be read in a manner which is consistent with the definition of incompetency contained in I.C. 29-1-18-1.[1] Dorothy has been adjudicated an incompetent as that term is defined by statute. The estate argues that I.C. 29-1-18-44 should be construed to alleviate the unfairness to the devisee occasioned by the acts of a guardian only "when the incompetent has not opportunity to remedy the situation by making a fresh will." Model Probate Code § 231, comment (1946). Where as here the testatrix is capable of making a new will at the time of transfer but chooses not to do so, I.C. 29-1-18-44 does not apply and the devise is adeemed. The estate cites as support for its position the common law rule that an adjudication of mental unsoundness in proceedings for the appointment of a guardian, while conclusively establishing the fact of inability to manage an estate, does not establish the existence of such unsoundness of mind as would incapacitate the person from making a valid will. *Emry v. Beaver* (1922), 192 Ind. 471, 474, 137 N.E. 55; *Harrison v. Bishop* (1892), 131 Ind. 161, 30 N.E. 1069.

 In our minds, the conclusion is inescapable that by use of the word "incompetent" in I.C. 29-1-18-44 the legislature contemplated a person meeting the statutory definition as no other meaning appears to us from the context of I.C. 29-1-18-44. Nonetheless, I.C. 29-1-18-44, by its terms, applies to a person incompetent at the time of the sale who never regains competency. Though I.C. 29-1-18-1 is broader than the definition offered by the drafters of the Model Probate Code,[2] both provisions envision an incompetent whose incapacity is mental, even

though the mental condition was caused by physical disabilities. Compare *In the Matter of Wurm* (1977), 172 Ind.App. 170, 360 N.E.2d 12 with Model Probate Code § 196, comment. Hence, it follows competency as used in both I.C. 29-1-18-44 and Model Probate Code § 231 refers to the presence of mental faculties formerly absent, i.e. the mental capability of managing one's estate.

 The evidence is conclusive that Dorothy was mentally capable of handling her estate and remaking her will at the time she died. Indeed, Oliver himself testified that Dorothy "had the right mind to, to run [the farm] I believe, I actually do" but was not physically capable of doing so. (R. 24, 25, 36). There is also evidence indicating that Dorothy was "confused" in 1983, that her "confusion" lasted for about a year and her physician believed at that time that she was afflicted with organic brain syndrome precipitated by her diabetes. However, her "confusion" cleared up completely in 1984 and from then on she was mentally very clear. The trial court could therefore have determined that Dorothy, though incompetent at the time the guardianship was created, was competent at the time of the sale of her residence and thereafter, and had the ability and opportunity to make a fresh will. Hence, I.C. 29-1-18-44 does not preclude a determination that the devise to Oliver had been adeemed.

The estate cites I.C. 29-1-2-14, -15 as bars to Oliver's recovery of the survivor's allowance. These statutory provisions prevent a spouse who is living in adultery at the time of his wife's death or who has abandoned his spouse without just cause from taking any part of her estate. Oliver maintains that the evidence is insufficient

1. I.C. 29-1-18-1 reads:
 When used in chapter 18 of this article, unless otherwise apparent from the context:
 ... [a]n 'incompetent' ... is a person who is: ... (2) incapable by reason of insanity, mental illness, mental retardation, senility, habitual drunkenness, excessive use of drugs, old age, infirmity, disappearance, or other incapacity, of either managing his property or caring for himself or both; ...

2. Much of the Indiana Probate Code enacted in 1953 came directly from the Model Probate Code. *See* L. Simes, *The Indiana Probate Code and the Model Probate Code: A Comparison,* 29 Ind.L.J. 341 (1953). I.C. 29-1-18-44 is analogous to § 231 of the model code. The drafters' comments on the intent of the Model Probate Code section are therefore useful in ascertaining legislative intent. Apparently, no references to the Indiana Probate Code Study Commission report are available for this section. See I.C. 29-1-1-4.

to establish either basis for denial of his claim.

The evidence favorable to the verdict shows that Oliver began residing in a trailer belonging to a Dorothy Eden as much as two years before the conservator sold wife Dorothy's residence, that he owns a home of his own in Letts where one of his children resides, that he lives in the trailer with Dorothy Eden where for about a year her daughter also resided, that he pays Dorothy Eden $100 per week rent, takes her to dinner, parties, and so forth, and was living there at the time of his wife's death. The record contains a photograph taken in December, 1986, of Oliver holding hands with Dorothy Eden at a VFW party. Oliver flatly denies living with Dorothy Eden in adultery or as husband and wife.

Although admittedly the circumstantial evidence offered here would have been insufficient as a matter of law to sustain a criminal conviction of the offense of adultery or fornication, *cf. e.g. Warner v. State* (1931), 202 Ind. 479, 175 N.E. 661; *Sams v. State* (1924), 195 Ind. 497, 145 N.E. 773, this is a civil case in which the degree of proof necessary to obtain a judgment is the lesser preponderance of the evidence standard. Oliver is likewise not aided by a presumption of innocence. As our courts have noted in the criminal context, the fact of carnal intercourse must in almost every case of adultery be inferred from the circumstances because direct proof of sex acts between the parties is virtually impossible to produce. *Weidenhammer v. State* (1913), 181 Ind. 349, 351, 104 N.E. 577. Thus, even though circumstantial evidence establishing an opportunity for misconduct may not be enough in a criminal case, the trial court may infer an adulterous cohabitation from such evidence. *Sostheim v. Sostheim* (1941) 218 Ind. 352, 355, 32 N.E.2d 699. It is also the trial court's privilege to disbelieve express denials in favor of circumstantial evidence tending to show that there have been improper relations as charged. *See Wharton v. Wharton* (1941), 218 Ind. 345, 32 N.E.2d 695. The evidence offered shows cohabitation even before Dorothy Oliver's residence was sold by her conservator, continuing after her death. We find this to be an adequate basis for inferring an adulterous relationship.

Judgment affirmed.

BAKER, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Judge, concurring.

I concur because I agree that there was evidence from which the trial court could reasonably conclude that Dorothy was competent to make a new will at the time of the sale of the real estate but did not do so. Accordingly, as held by the majority, I.C. 29-1-18-44 was not applicable and the alleged life estate devised to Oliver was adeemed.

I am unable to agree, however, that the evidence supports a conclusion that after Dorothy was placed in a nursing home, Oliver had abandoned her and/or took up an adulterous relationship with Ms. Eden. Dorothy and Oliver could not live together or cohabit quite simply because Dorothy was in a nursing home. This does not constitute abandonment. The evidence that Oliver, who at the time in question was 66–68 years old and who paid rent for his living quarters in the trailer, was seen with Ms. Eden in social settings, does not lead to a conclusion that they were engaging in sexual intercourse. It is not unknown for adult males and females of all ages to have living arrangements for convenience and economic reasons without sexual involvement. It is particularly not uncommon for couples of advanced age to have relationships born of the desire for companionship.

Subject to the caveat stated, I concur.